UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
FILED
APR 21 2006
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 05-338-GWU

LEONARD E. LUNA, SR.,                                           PLAINTIFF,

VS.                           **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                                DEFENDANT.

**INTRODUCTION**

The plaintiff brought this action to obtain judicial review of an administrative denial of his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the Court on cross-motions for summary judgment.

**APPLICABLE LAW**

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to

1

Luna

      Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial

2

Luna

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

3

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

Luna

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

5

Luna

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency

6

may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Leonard E. Luna, Sr., was found by an Administrative Law Judge (ALJ) to have a "severe" impairment due to degenerative disc disease of the cervical spine. (Tr. 17). Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that Mr. Luna retained the residual functional capacity to return to his past relevant work as a small parts assembler or, in the alternative, to perform other jobs existing in the economy and, therefore, was not entitled to benefits. (Tr. 20-4). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age of 47 years, high school equivalency education, and work experience as a small parts assembler and a factory machine operator could perform any jobs if he were capable of "light" level exertion, and also had the following non-exertional impairments. (Tr. 324). He: (1) could stand or walk only two

7

hours in an eight-hour day; (2) could never climb ladders, ropes, or scaffolds; (3) could occasionally climb ramps or stairs, kneel, stoop, and crawl; and (4) needed to avoid vibrations and hazards. (Id.). The VE responded that such a person could return to the plaintiff's past job as a small parts assembler. (Id.). In the alternative, after noting that the walking and standing restrictions would limit the hypothetical individual to sedentary level work, the ALJ stated that such a person could perform the jobs of surveillance system monitor and non-emergency dispatcher, and proceeded to give the numbers in which these jobs existed in the regional and national economies. (Tr. 325).

On appeal, this Court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

Mr. Luna testified that he had stopped working in August, 2001 as a factory machine operator because of neck problems, which were eventually diagnosed as being the result of cervical stenosis. (Tr. 59, 297-9, 301, 303). After undergoing surgery, and six months of rehabilitation, he had been given a restriction of lifting no more than 10 pounds, and his company did not have a job for him in that category. (Tr. 303-4). He testified that he had constant pain in his neck, which ran all the way to his toes, and he was unable to lift even a gallon of milk without using both hands, or to perform daily activities such as bathing and dressing without the assistance of

his wife. (Tr. 305, 309-10). Several years before he stopped working, he had carpal tunnel surgery in both hands, as well as elbow surgery, and he still had numbness and pain in his hands, and frequently dropped items. (Tr. 304, 306). Other problems included low back pain, headaches, and "blackouts." (Tr. 307, 310-12).

Records from 1993 and 1995 confirm that the plaintiff had bilateral carpal tunnel surgery and bilateral cubital tunnel release surgery. (Tr. 91-3, 249, 255-61, 266-8). One of his treating sources opined in June, 1995, that Mr. Luna would have a 24 percent impairment under American Medical Association (AMA) guidelines, and should not return to work that required repetitive upper extremity movements as a result of lifting and gripping restrictions outlined in a functional capacity evaluation. (Tr. 249).[1] The same physician later wrote a letter stating that the only significant functional impairment using the AMA guidelines was loss of grip strength, which might slowly return, and he recommended retesting at a later date. (Tr. 267). In any case, the plaintiff testified that following this surgery he had returned to a sedentary assembly job, which involved fine manipulations with his hands, and did not have any trouble. (Tr. 316-17). It was only after his job changed in approximately the year 2000, and he had to begin lifting up to 65 pounds regularly, that his neck problems had come to light, and his carpal tunnel problems started

---

[1] The functional capacity evaluation indicates a limitation to "occasional" grasping but Mr. Luna was considered capable of carrying 69 pounds frequently, and all other activities were rated "frequently" or "continuously." (Tr. 102-8).

9

Luna

coming back. (Tr. 300-1, 318). EMG testing of the upper extremities in March, 2001, did show evidence of some nerve irritation, but no evidence of actual injury which was "new or ongoing." (Tr. 240-3). A short course of physical therapy was suggested. (Id.).

Records relating to the plaintiff's neck problems include a MRI from March, 2001 showing multilevel degenerative disc disease and cervical spondylosis (Tr. 112). Dr. Steven Schroeder, a neurosurgeon, diagnosed spastic quadriparesis secondary to cervical myelopathy from cervical spondylosis and disc protrusion, and in August, 2001, performed a C3-C6 total laminectomy with decompression of the spinal cord. (Tr. 121-4). At a follow-up with another physician in Dr. Schroeder's office in January, 2002, Mr. Luna complained of numbness of both hands and forearms "at times," although this had reportedly been present for "a long time." The physician noted that his gait was better than before the surgery and his neck motions were full. (Tr. 205). A new MRI of the cervical spine showed degenerative disc disease at all levels, laminectomies at C3 through C6, mild to moderate cervical kyphosis, a bulge at C4 through C6 with an osteophytic spur and ridge causing moderate narrowing of the right neuroforamina as well as an asymmetric osteophytic ridge causing mild narrowing at C6-7. (Tr. 203). Apparently, there was no follow-up with Dr. Schroeder's office.

The only examining source to give an opinion regarding functional restrictions after the plaintiff's alleged onset date of August 2, 2001 was Dr. David Winner, D.O., who performed a consultative evaluation in July, 2002, and also reviewed the January, 2002 cervical spine MRI and Dr. Schroeder's discharge summary following the laminectomy in August, 2001. (Tr. 232). Mr. Luna told Dr. Winner that he had neck pain, bilateral arm pain and weakness, and bilateral leg pain and weakness. (Id.). The physical examination showed an abnormal range of motion of the cervical spine, with only 15 degrees of lateral flexion to the right and left and 30 degrees of rotation to the right and left, as well as bilateral shoulder flexion and abduction reduced from 170 degrees to 110 degrees. (Tr. 233). The physician noted that Mr. Luna was clearly uncomfortable secondary to cervical pain, but his upper extremity motor strength was normal, and he had a full range of motion of the elbows, wrists, and fingers. (Tr. 233-4). The only part of his body which had sensory deficits appeared to be his feet, and all reflexes were intact. (Tr. 234). Grip strength was normal. (Id.). There was some weakness of the left leg, and Mr. Luna had a pronounced limp as a result and could not perform a tandem walk. (Id.). Dr. Winner's assessment was that Mr. Luna had a significant history of cervical spondylosis and myelopathy, and he "suspect[ed]" that the deficits found on physical examination might be chronic in nature. He also wrote: "I suspect that this gentleman will probably not be able to do significant manual labor as long as these deficits

11

remain." (Id.). He indicated that there would be unspecified limitations in Mr. Luna's ability to perform "activities such as standing, moving about, lifting, carrying, and handling objects," but there were no limitations on sitting, hearing, seeing, speaking, or traveling. (Id.). He added that "I feel that this patient has several physical limitations for manual labor and I suspect that his lack of education would preclude him from other sorts of labor." (Tr. 234-5).

A state agency physician, Dr. Timothy Gregg, reviewed the evidence at this point and found functional restrictions consistent with the ALJ's hypothetical question, except that he opined that the plaintiff would be able to stand and walk for three to four hours per eight-hour day, rather than only two. (Tr. 221-30). He did not list any handling restrictions, and did not mention Dr. Winner's indication that Mr. Luna would have limitations in handling objects. (Tr. 221). Another state agency physician affirmed Dr. Gregg's findings without comment in February, 2003. (Tr. 278-83).

Evidence following Dr. Winner's examination was subsequently introduced from a chiropractor, who examined the plaintiff in November, 2002 for complaints of neck pain, but there were no abnormalities of the cranial nerves noted, there was no atrophy, and all muscle groups had normal strength. (Tr. 238). The only finding listed was pain on palpation of the neck and head muscles, and a decreased lordotic curve and disc space narrowing as well as osteoarthritis on cervical spine x-rays.

(Id.). However, the chiropractor felt that the plaintiff would receive favorable results from his treatments. (Id.). No further treatment is indicated, however. Finally, Dr. James Gariti examined the plaintiff in September, 2003 as a new patient, and noted a flattened affect and that he was "ill appearing" and "frail appearing." (Tr. 289). However, other than neck and back tenderness, his examination appeared to be unremarkable, as it noted a normal gait, strength, sensation, and ambulation, and that the results of the examination of the extremities were also normal. (Tr. 289-90). The only condition assessed was nicotine addiction, although pain medication was prescribed. (Tr. 290). No functional restrictions are suggested. There was no other recent medical treatment other than brief emergency room visits with few findings and no restrictions given.

  The plaintiff's primary argument on appeal is that the ALJ based his opinion on a non-examining state agency medical consultant, and did not give proper weight to Dr. Winner's comments regarding limitations on manual labor and lack of education which would preclude him from "other sorts of labor." (Tr. 234-5). However, the latter comment was clearly a vocational conclusion outside the doctor's area of expertise, and the jobs given by the VE were not "manual labor" positions, in any case. The Court does note the discrepancy between Dr. Winner's indication that the plaintiff would have handling restrictions, which are supported by objective findings regarding limitations of neck and shoulder range of motion, and

13

Luna

the lack of any such restrictions by the state agency physicians and in the hypothetical question. However, although restrictions on handling might possibly preclude the performance of a sedentary assembly job as well as a dispatcher position, the VE still identified the job of surveillance system monitor. <u>Dictionary of Occupational Titles</u> (DOT) Section 379.367-010 indicates that this position does not involve any reaching or handling, and the plaintiff has not produced contrary evidence. Therefore, even interpreting the evidence in a light most favorable to the plaintiff, the VE still identified jobs that he would be capable of performing.

The plaintiff also argues that the ALJ improperly evaluated his subjective complaints of pain, but an examination of the hearing decision shows that the ALJ extensively discussed the plaintiff's subjective complaints (Tr. 19), and stated that he found their credibility to be only fair at best based on his lack of recent treatment for carpal and cubital tunnel syndrome, the normal findings of Dr. Winner in November, 2002, and the lack of findings of any objective abnormalities by Dr. Gariti. (Tr. 19-20). The ALJ also cited the plaintiff's successful return to work as a small parts assembler following his surgery, the lack of any evidence of treatment for lower back problems, despite the plaintiff's allegations of two motor vehicle accidents, and the indication by the physician at Dr. Schroeder's office in January, 2002 that Mr. Luna's neck had a full range of motion. (Tr. 19-20). Therefore, the ALJ fulfilled the requirements of the Social Security Ruling, 96-7p, cited by the plaintiff, which

14

Luna requires that the adjudicator review the entire case record if making a finding that a claimant's statements are not substantiated by objective medical evidence. The ALJ's evaluation was entirely adequate in this regard.

Finally, the plaintiff's argument that the ALJ failed to consider his impairments in combination is also without merit. See Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).

The decision will be affirmed.

This the 21 day of April, 2006.

G. WIX UNTHANK
SENIOR JUDGE

15